```
                   UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY

Loveday Anyawu,                  : Civil A. No. 08-6319(NLH)(KMW)
        Plaintiff,               :
                                 :
     v.                          :     OPINION
                                 :
BJ's Wholesale Club, Inc.,       :
        Defendant.               :
```

**APPEARANCES:**

Mark Garnet Davis, Esquire
The Davis Law Firm, LLC
184 South Broad Street
Trenton, NJ 08690

    *Attorney for plaintiff*

Gregory T. Alvarez, Esquire
Robert M. Pettigrew, Esquire
Jackson Lewis LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, NJ 07960-6844

    *Attorney for defendant*

**HILLMAN**, District Judge

    This matter has come before the Court on defendant's motion to dismiss plaintiff's wrongful termination and retaliation claims. For the reasons expressed below, defendant's motion will be granted.

## BACKGROUND

    Plaintiff, Loveday Anyawu, who describes himself as a "Nigerian individual," worked as a Lead Security Officer for defendant BJ's Wholesale Club from June 23, 1997, until November 7,

1

2006, when defendant terminated his employment.  Plaintiff filed a two-count complaint in state court on November 17, 2008.  In the first count of the complaint, plaintiff alleges that defendant violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(a) ("NJLAD") by terminating plaintiff's employment because of his Nigerian national origin.  In the second count of the complaint, plaintiff alleges that defendant violated the NJLAD, N.J.S.A. 10:5-12(d), by retaliating against plaintiff for his participation in an earlier investigation of the defendant's employment practices.

On December 23, 2008, defendant removed the case to this Court and subsequently filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Defendant argues that plaintiff's claims are barred by the NJLAD two-year statute of limitations because the claims accrued when defendant fired plaintiff – more than two years before plaintiff filed this claim.  In response to the motion to dismiss,[1] plaintiff filed an amended complaint, adding a factual allegation postdating the date of plaintiff's termination.  More specifically, the amended complaint alleges:

---

[1] Pursuant to Rule 15(a) "a party may amend its pleading once as a matter of course before being served with a responsive pleading."  The Third Circuit has held that "a motion to dismiss is not a responsive pleading and that Rule 15(a), therefore, allows one amendment as a matter of right up to the point at which the district court grants the motion to dismiss and enters final judgment." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) (citation omitted).

>    20.  On January 11, 2007, the New Jersey Department of Law and Workforce Development ("NJLWD") issued Plaintiff Anyawu a written Notice of Determination advising him that his disqualification for unemployment benefits had resulted from being discharged by defendant for alleged misconduct; to wit, leaving company premises without permission.  (Compl. ¶ 20).

Plaintiff now argues that the denial of his unemployment benefits constituted the final act in a pattern of workplace discrimination and therefore, both counts of the complaint are subject to the continuing violation exception to the two-year statute of limitations.[2]  Specifically, plaintiff argues that the violation of the NJLAD continued for two months after his termination until plaintiff received notice from the New Jersey Department of Law and Workforce Development ("NJLWD") that he was ineligible for unemployment benefits.  Accordingly, plaintiff argues both counts of his amended complaint are timely filed and should not be dismissed.

In reply, defendant argues that plaintiff's claims are based on discrete acts of discrimination that cannot be aggregated to establish a continuing violation.  Therefore, defendant contends, plaintiff's claims are still time-barred and the complaint should be dismissed.

---

[2]In his amended complaint, Plaintiff also alleges that Defendant, "knowingly [made] false allegations of Plaintiff Anyawu's misconduct to disqualify him for unemployment benefits." (Compl. at ¶ 21). Plaintiff does not, however, allege any date for this conduct.

**DISCUSSION**

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391.

**B.   Standard for Motion to Dismiss For Limitations Defense**

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Baldwin County Welcome Ctr. v.

4

Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).  A court in reviewing a Rule 12(b)(6)

motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999).

Typically, a statute of limitations defense must be raised in the answer because Rule 12(b) does not permit it to be raised by motion. Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). The "Third Circuit Rule," however, "permits a limitations defense to be raised by a motion under Rule 12(b)(6) if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" Id. (quoting Hanna v. U.S. Veteran's Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Here, it is apparent on the face of plaintiff's complaint that plaintiff may be time-barred from asserting claims that occurred on November 7, 2006. Therefore, defendant may raise a statute of limitations defense in its instant Rule 12(b)(6) motion to dismiss.[3]

**C.   Analysis**

It is an unlawful employment practice for an employer to discharge an employee based on their national origin, New Jersey

---

[3] Plaintiff alleges one set of facts to substantiate both counts of the complaint under NJLAD. Therefore, both counts will be dealt with under one analysis.

Law Against Discrimination N.J.S.A. 10:5-12 ("NJLAD"), or to further retaliate against a person for opposing practices that violate the NJLAD. N.J.S.A. 10:5-12(d). Claims pursuant to N.J.S.A. 10:5-12 are subject to a two-year statutory filing limitation. Montell v. Haynes, 627 A.2d 654, 655 (N.J. 1993). New Jersey recognizes an exception to the statutory filing period and allows the plaintiff to pursue an NJLAD claim if the plaintiff can establish that, if viewed cumulatively, the series of discriminatory or harassing events would establish one continuing violation. See Shepherd v. Hunterdon Developmental Center, 803 A.2d 611, 621 (N.J. 2002) (citing Wilson v. Wal-Mart Stores 729 A.2d 1006 (N.J. 1999)) (stating that New Jersey adopted the continuing violation doctrine and a significant number of courts recognize that a series of discriminatory events represent a single cause of action). At least one of the acts in the alleged continuing violation must occur within the statutory filing period. Bolinger v. Bell Atlantic, 749 A.2d 857, 860 (N.J. 2000).

More generally, the continuing violation doctrine applies when the acts of harassment continue over a period of time, but the individual acts are insufficient to constitute an actionable claim. See Hall v. Saint Joseph's Hospital, 777 A.2d 1002, 1011 (N.J. 2001)(citing Rush v. Scott, 114 F.3d 476, 482 (3rd Cir. 1997)). Once plaintiff becomes aware, however, of the discriminatory conduct, he or she is obligated to commence

7

litigation.  Id. ("[I]f plaintiff knew, or with the exercise of reasonable diligence should have known that each act was discriminatory, the plaintiff 'may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one.'").

To determine whether the alleged acts constitute one continuing violation, New Jersey follows the Third Circuit's lead in adopting the three-part test laid out by the Fifth Circuit in Berry v. Bd of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1982).[4]  See Bolinger v. Bell Atlantic, 749 A.2d 857, 860-61(N.J. Supp. Ct. App. Div. 2000).  According to the Berry test, courts should consider at least three factors: (1) Subject matter: whether all of the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation;(2) Frequency: whether the alleged acts are either recurring or discrete acts–the acts alleged must be at least of a substantially similar nature; and (3) Degree of permanence: whether the act has the degree of permanence which would trigger an employee's awareness of and duty to assert his or her rights.

---

[4] The Third-Circuit adopted the Berry test in West v. Philadelphia Elec. Co., 45 F.3d 744, 745 (3d Cir. 1995) and has upheld the application of the Berry test in subsequent case law. See, e.g., Rush v. Scott, 113 F.3d 476 (3d Cir. 1997).  New Jersey courts "traditionally look to federal precedent governing Title VII as a "key source of interpretive authority in construing the LAD".  Roa v. Lafe, 955 A.2d 930, 937 (N.J. Super. Ct. App. Div. 2008)(citing Lehmann v. Toys 'R' Us, Inc., 626 A.2d 445 (N.J. 1993)).

Hall,777 A.2d at 1010; Bolinger, 749 A.2d at 861.

To determine whether an pattern is complete and has put the injured employee on notice of a NJLAD violation, New Jersey distinguishes between discrete acts, such as employment termination, which is individually actionable, and acts which are not individually actionable but may be aggregated to make a claim. Shepherd, 803 A.2d at 623 (citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)). If the alleged action is a discrete act, the claim accrues on the day on which the discrete act occurred. Id. The following is a non-exhaustive list of discrete acts that trigger the running of the statutory filing period: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation. Morgan, 536 U.S. at 114. Once a party is put on notice of a continuing violation, the employee's cause of action accrues on the date of the last act of the pattern. Id.

The continuing violation doctrine, however, cannot be used to bring discrete acts of discrimination within the statutory filing period. Brennan v. State, 2009 WL 2192429 at *5 (N.J. Super. Ct. App. Div. 2009). Thus, if the alleged act is the continuing effect of a prior violation, rather than a separate instance of discrimination, the statute of limitations begins to run on the date of the last instance of alleged discrimination. Alliance for

Disabled In Action, Inc. v. Renaissance Enterprises, Inc., 853 A.2d 334, 342 (App. Div. 2004), aff'd, 885 A.2d 952 (2005)("[T]here is a distinction between a continuing effect and a continuing violation and to treat them as synonymous is to disregard any period of limitations.")

Here, in order to bypass the November 7, 2008, statute of limitations and time-bar date, plaintiff attempts to connect his employment termination with prior comments made by his coworkers and the subsequent denial of unemployment benefits to establish a continuing violation. Specifically, plaintiff alleges that beginning in 2004, after plaintiff testified against defendant in a sexual harassment action, defendant's employees began to make derogatory comments regarding his Nigerian national origin. Amended Complaint, ¶¶ 12, 13.[5] Plaintiff also alleges that the defendant, through its employees, made reference to plaintiff's African heritage and attempted to force plaintiff to sign a false statement regarding his own alleged improper conduct. Id. at ¶¶ 13, 15. Plaintiff also contends that despite receiving prior approval, defendant reprimanded plaintiff for leaving the workplace without permission. Id. at ¶ 17.

On November 7, 2006, defendant terminated plaintiff's

---

[5] Plaintiff, however, does not provide the dates of any of the alleged comments to establish temporal proximity with the termination to permit the factfinder to draw a causal connection between the events.

10

employment due to the disputed misconduct of leaving the workplace without permission.  Plaintiff contests the legality of the employment termination on the grounds that the termination was part of a pattern of discrimination.  To support this claim, plaintiff argues that the continuing violation continued for two months after the termination until plaintiff received notice from the NJLWD that he was ineligible for unemployment benefits due to his alleged misconduct.

It is well-settled that an employment termination is a discrete act of alleged discrimination.  Caggiano v. Fontoura, 804 A.2d 1193, 1204 (N.J. Super. Ct. App. Div. 2002)(citing National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002)).  Neither New Jersey state courts nor the Third Circuit, permit a plaintiff to aggregate discrete acts of discrimination to establish a continuing violation.  O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006); Shepherd, 803 A.2d 611, 622 (N.J. 2002) (citing National Railroad Passenger Corp. v. Morgan, 122 S.Ct 2061, 2073 (2002)).

For example, in Bolinger v. Bell Atlantic,749 A.2d 857, 862 (N.J. 2000) the plaintiff attempted to establish a continuing violation and prolong the statutory filing period by aggregating his demotion to part-time status with his continuous receipt of disability pay.  The Court held, however, that the removal from full-time status and initial placement on disability created an

11

"actionable claim the moment he was removed from all duties. At that point, he experienced the full impact of his injury, although the amount of actual damages may have continued to accrue." Like Bolinger, plaintiff knew of the alleged discriminatory conduct when his employer terminated his employment.

Similarly, in Brennan v. State, 2009 WL 2192429 (N.J. Super. Ct. App. Div. 2009), the plaintiff claimed that testimony against him, by employers, after they changed his job function, constituted an additional discriminatory act and should be considered the last act in a continuing violation. The Court, however, was not convinced that the post-termination testimony constituted an additional act in the pattern of discrimination, "[P]laintiff's argument, if accepted, would mean that the LAD's statute of limitations would automatically renew whenever an employer or its witnesses testified contrary to a plaintiff's version of events." Similar, logic applies here; if Anyawu's argument were accepted, the LAD statute of limitations would renew every time plaintiff experienced the negative side effects of losing his employment.

Even if the employment termination was not sufficient to put the plaintiff on notice of discriminatory conduct, and therefore did not trigger the statutory filing period, plaintiff's claim does not constitute a continuing violation under the Berry test. First, the alleged acts - comments regarding the plaintiffs

12

national origin and past action, the termination of employment based on alleged misconduct, and the state's denial of unemployment benefits - do not involve the same type of discrimination.  Discussion of plaintiff's Nigerian heritage and the termination for alleged misconduct appear to be unrelated.  For example, in Gibson v. State, 2007 WL 737748 at *10 (N.J. Super 2007), the plaintiff alleged that various coworkers repeatedly insulted plaintiff's gender and sexuality.  The plaintiff then attempted to tie this commentary to a later unwanted employment transfer to establish a continuing violation.  The court held, however, that although the comments were similar in subject matter, they were unrelated in nature to the job transfer.  Similarly here, plaintiff attempts to link together unrelated discriminatory remarks and the later loss of employment as a continuing violation.  Plaintiff makes the conclusory claim that the racial remarks and his discharge for an unapproved absence are related.  He does not, however, support this assertion with sufficient facts in the pleading to demonstrate that the termination was pretextual for racial discrimination.

    Second, although plaintiff's complaint cites two comments about his African heritage, viewed in totality with the other alleged acts, plaintiff has not pleaded a recurring pattern of discriminatory conduct.  The acts alleged in plaintiff's complaint are isolated and disconnected instances of alleged discrimination

rather than recurring acts of the same type.  For example, in Rush v. Scott, 113 F.3d 476, 483-84 (3d Cir. 1997), the plaintiff also attempted to side-step the statute of limitations on a failure to promote claim by demonstrating a pattern of discrimination. Specifically, the plaintiff attempted to tie into her sexual harassment claim the fact that she did not receive a promotion because the company hired a new employee.  Rush, 113 F.3d at 484. Because the claimed acts were each separate and distinct from one another, the Rush Court declined to apply the continuing violations doctrine to her failure to promote claim.

In contrast, in Shepherd, 803 A.2d at 615-20, plaintiff alleged that he had been subjected to continuous verbal abuse regarding plaintiff's race over a significant period of time.  The court found that the similar type of comment and the frequent repetition of it, made the alleged acts sufficiently related to establish a continuing violation.  Here, however, plaintiff alleges unrelated and stray remarks, wrongful termination for an unexcused absence and the subsequent denial of unemployment benefits.  These alleged acts lack the similar qualitites that the court found dispositive in Shephard.  Thus, we are not convinced that the alleged acts are sufficiently related to establish a recurring pattern of behavior.  See Cowell v. Palmer Township, 263 F.3d 286, 295 (3d Cir. 2001)( "[t]he type of acts that would satisfy the 'frequency' factor . . . must at least be acts of

14

substantially similar nature to those which were the basis of the original claim").

Third, even if the alleged comments about plaintiff's national origin did not have had the degree of permanence to trigger plaintiff's awareness of a discrimination claim for that alleged behavior, the termination of his employment was sufficiently permanent to indicate to plaintiff the violation of his rights. See Hall,777 A.2d at 1010 ("The purpose of the continuing violation doctrine is to permit a plaintiff to include acts whose character as discriminatory acts was not apparent at the time they occurred.")  Here, it is clear on the face of his complaint that plaintiff knew of the claim when he lost his job.

To allow plaintiff to proceed with his claims now would be unfair to the defendant and contrary to the policy rationale for the statute of limitations.  See, e.g., Cowell, 263 F.3d at 295 (prohibiting plaintiff from using the continuing violation doctrine to link unrelated incidents because it was a policy violation).  To hold otherwise, and allow plaintiffs to aggregate all unrelated claims to establish a continuing violation, would discourage future plaintiffs from exercising diligence in pursuing timely claims. Hall, 777 A.2d at 1010; Bolinger, 749 A.2d at 861. The complaint fails all three factors of the Berry test.

Finally, in an attempt to skirt the statutory filing period and support his position that defendant engaged in a continuing

15

violation, plaintiff relies on Roa v. Lafe, 955 A.2d 930, 938 (N.J. Super. Ct. App. Div. 2008). In Roa, the wife-plaintiff alleged that her employer terminated her employment on August 24, 2003, in retaliation for making a complaint about her supervisor's conduct.[6] When the defendant moved to dismiss the case because the complaint was filed more than two years after the alleged retaliatory discharge, the plaintiff argued that defendant retaliated against her, post-termination, by opposing her application for unemployment benefits on allegedly false grounds. Id. at 936. Although the Appellate Division dismissed her claim on factual grounds, they held that the continuing violation doctrine for retaliatory discharge is not automatically cut-off by an employment termination. Id. at 938.

We find, however, that Roa is inconsistent with prior decisions of the New Jersey Supreme Court[7] which hold that employment termination is a discrete act of discrimination and cannot be aggregated with subsequent acts of discrimination to

---

[6] The husband-plaintiff also alleged that his employment was terminated for the same reason. Specifically, the husband argued that the defendants retaliated against him by improperly canceling his health insurance prior to terminating his employment and the impact of losing his insurance was not felt until November 11, 2003, over a month after losing his job. The facts of the husband's claim are not comparable, and therefore immaterial, to this action.

[7] The New Jersey Supreme Court has certified the Roa decision for review. See Roa v. Roa, 963 A.2d 846 (N.J. 2009).

16

establish a continuing violation.  See Shepherd, 803 A.2d at 622 (citing National Railroad Passenger Corp. v. Morgan, 122 S.Ct 2061, 2073 (2002); Caggiano v. Fontoura, 804 A.2d, 1193, 1204 (N.J. Super. Ct. App. Div. 2002)(citing Morgan, 536 U.S. at 114).  Because of Roa's apparent inconsistency with binding precedent,[8] we decline to follow it.

Even if Roa was rightly decided, the wife-plaintiff's claim is factually different than plaintiff's claim here.  In Roa, the wife-plaintiff clearly alleged not merely that she received notice of the denial of benefits post-termination but that the defendant engaged in specific post-termination conduct by giving the NJLWD false information about the reasons for her termination. Roa, 955 A.2d at 934 (defendants "lied" when plaintiff sought benefits after termination).  Here, the amended complaint contains no such allegation nor may we add it or presume it.  Here, plaintiff merely alleges the discrete act of employment termination and the passive act of receiving notice of the State's denial of unemployment benefits without pleading a specific date of any

---

[8] In this matter the Court exercises its diversity jurisdiction and has before it only state statutory claims.  As such, it is bound to apply the law as determined by the state's highest tribunal. Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543 (1941)("the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court").

misconduct on the part of the employer.[9] As he pleads it, the state's denial of unemployment benefits is tangential to the alleged discriminatory termination and merely the "continuing effect of a prior violation," rather than a separate and continual unlawful act. Roa, 955 A.2d at 938; Alliance for Disabled In Action, Inc., 853 A.2d at 422. But-for plaintiff's termination for an allegedly discriminatory reason, he would not have applied for unemployment benefits, and those benefits would not have been denied on that basis. In other words, it is not the denial of benefits that was allegedly discriminatory, but rather the termination and events leading up to the termination. Because the denial of benefits is merely the effect of the alleged wrongful termination, the statute of limitations began running on the date of the discrete act of termination, not the subsequent denial of benefits two months later. Id.

---

[9] As we noted earlier, supra note 2, the relevant paragraphs added to the amended complaint contain no clear, factually specific allegations of post-termination conduct within the statutory time period related to the unemployment benefits. See Amended Complaint at ¶¶ 20 & 21. These vague and conclusory paragraphs are insufficient to meet the pleading requirements of Fed.R.Civ.P 8. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1969 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."). Rule 8 now clearly requires "enough factual matter (taken as true) to suggest" the required element or contentio, Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). Merely "bald assertions" or "legal conclusions" are not enough. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).

Plaintiff's retaliation claim accrued on November 7, 2006, and expired two years from that date.  Accordingly, because plaintiff did not file his retaliation complaint until November 17, 2008, it is time-barred and must be dismissed.

## CONCLUSION

For the reasons expressed above, plaintiff's claims under the NJLAD must be dismissed as time barred by the two-year statute of limitations.  An appropriate Order will be issued.


Dated:__August 10, 2009_____          s/ Noel L. Hillman_____
                                      NOEL L. HILLMAN, U.S.D.J.
At Camden, New Jersey